The minor plaintiff was injured late in the evening of June 6, 1928, when he fell through an open trap in a building, known as a sump house, owned by defendant municipality. A jury awarded minor plaintiff $12,500, *Page 342 
and his father $5,000. Motions for a new trial and judgment, non obstante veredicto, are before us.
Detail of the location is essential to an intelligent understanding of the accident. The Borough of Turtle Creek maintains and operates apparatus for the purpose of pumping sewage to the level of a stream into which it is discharged. It is housed in a small brick pumping station erected over the sewage sump. This structure is located along the stream, called Thompson's Run, but about twenty feet above the stream level and on grade with the borough streets in the vicinity. It is about 160 feet back from Penn Avenue, and between it and the street line is a three-story brick building, known as the Zischkau property. Access from the street to the pump house is by a passageway about eight feet wide, paved with cement and running between the Zischkau building on one side and Thompson's Run on the other. This passageway being some twenty feet above the water level of the run, has an iron guard rail along its entire length and across its end at the pump house, to which the iron rail is there attached. The cement passageway is laid upon property belonging to the Zischkau plot and the pump house is on private property not owned by the municipality, but wholly within its control and operation.
The sump house or pumping station, as it is variously known, is eighteen feet in length and nine and one-half feet wide. The region beneath its floor level down to the stream level, twenty feet below, is called the sump. The sewage pumps are located in the sump, while the floor of the pumping station contains motors, valve stands and other mechanism for operation of the pumps. Access from the floor of the building to the sump is by means of an open trap giving to a ladder which reaches the bottom of the sump. This open trap is diagonally opposite the door, which provides the only entrance to the building, and between the door and the trap are the motors, valve stands and other machinery, *Page 343 
so that one entering by the door can not reach the trap without taking one's way carefully around the intervening apparatus.
The eight foot passage or driveway by which the building is reached from Penn Avenue is in fact a private way and there is at its entrance a sign so indicating. It appears, however, that the Penn Avenue curb has been chipped to facilitate passage of trucks delivering stock to the rear of the stores in the Zischkau property, and it has likewise been used as a parking space for automobiles owned by employees of those stores. It runs to a blind end at the sewage sump. In front of the pumping station there are two manholes in the cement pavement. Their covers are of cast iron and cement, weighing 125 to 140 pounds and beveled to fit into the circular opening. One of these manholes, (the one to which the minor plaintiff attributes his injury), is five feet three inches from the door of the pumping station, which is two feet eight inches in width.
According verity to plaintiffs' evidence, as we must in considering the motion for judgment non obstante veredicto, it appears that minor plaintiff, while playing some sort of a game in the nature of "catchers," went back into the passageway to urinate. He tripped and fell headlong into the open doorway of the pump house, striking his head on the door frame; staggering to his feet, he reeled about the interior of the building, ultimately falling into the open trap. It is to be observed that minor plaintiff does not know what caused him to trip and that the door was open is purely a matter of inference with him. Thus his narrative is lacking in any element of negligence on the part of defendant. This is sought to be supplied by the witness, Dexter, who, when a man ran from the rear of the passage way a few minutes after the accident saying somebody had fallen, went back and says he found the first of the two manhole covers near the doorway displaced and that he "kicked it into place." *Page 344 
Taking all the facts and inferences of fact most favorable to plaintiffs, can they recover? In order that they may, it must first appear that the minor plaintiff had reason to believe the passageway was a public thoroughfare, for otherwise he was at best a mere licensee and perhaps an actual trespasser. It must further appear that the tilted manhole cover (which is presented as the proximate cause of the injury), and the open door of the pump house, concurring acts of negligence charged to defendant, existed with either actual or constructive notice to defendant. Again, to justify recovery, minor plaintiff's fall must be a natural and probable consequence of the negligence alleged, such as defendant should have foreseen. Finally, these matters must be established without showing contributory negligence on the part of the minor plaintiff.
Thus analyzed, we are of opinion that plaintiffs failed to establish their right of recovery. There is no adequate proof that the minor plaintiff thought or had reason to think the passageway into which he entered was a public thoroughfare. It had been in existence but four months, according to plaintiffs' witness, Barnes. The minor plaintiff himself testified that he never knew of its existence before. It was so dark, according to minor plaintiff, that "you couldn't see your hand in front of you." Not a scintilla of evidence appears that the way was ever subjected to a public use by either pedestrian or vehicular traffic, and the affirmative testimony of plaintiffs' witness, Barnes, is that it was not. The building on the property was not a public municipal building. Under these circumstances, we are of opinion that the minor plaintiff was a mere licensee. The distinction between a licensee and an invitee as defined in Curtis v. De Coursey, 176 Pa. 446, 450, so indicates. Also the distinction between a trespasser and a licensee and the circumstances under which defendant might be held liable as such are discussed and analyzed in Balser v. Young, 72 Pa. Super. 502, 506, and *Page 345 
consideration of the cases there digested indicates no breach of duty by defendant in the case at bar which could charge it with liability and must determine this motion against plaintiffs.
But, without this, there is still the question of whether or not sufficient evidence of negligence is presented. Only the testimony of Dexter appears to show displacement of the manhole cover, which is given as the proximate cause of the injury. While this witness's statement is open to strong suspicion as to accuracy, inasmuch as he discovered the manhole cover raised two feet three inches and kicked it into place in a region that the minor plaintiff says was in utter darkness, yet at best it raises a mere inference. It was a discovery he made after others had been back to the scene and reported that someone had fallen. Negligence cannot be presumed and the evidence must afford the jury a visualized occurrence that excludes any other inference except that of defendant's negligence. We think plaintiffs have failed in this respect. But if we admit adequate proof of the tilted manhole cover and the open door of the building as negligence, we are met then by the lack of notice. The manhole cover was of reasonably safe construction, although there is some evidence to show that other devices are in use. How it became displaced or how long it remained so are circumstances wholly ignored in plaintiff's case. Evidence of several children that they saw it occasionally tilted we do not deem sufficient to charge defendant with notice, particularly in view of the fact that the occasions go back to a time long prior to the construction of the passageway.
Further than this, we are disposed to the opinion that the open trap, located as it was in the uttermost corner of this building, was not maintained in such a way that the defendant could be bound to anticipate that one passing by the building might by any mischance enter the same and find one's way through the machinery there installed to the unguarded trap. Finally, *Page 346 
can we reasonably say that the minor plaintiff was not guilty of contributory negligence? According to his own testimony, he had never known this place existed before. It was in utter darkness, he says, yet he went back at least 150 feet from the street and his progress was so precipitous that when he stumbled, he plunged headlong and was propelled into the doorway of the pump house. True, if he had reason to believe that it was a public thoroughfare, then he had a right to believe that it was in a reasonably safe condition as a pedestrian passage, at night as well as by day. But under the circumstances here existing, we deem minor plaintiff to have shown his own lack of due care when with no evidence of forethought or careful progress (indeed, results indicate the contrary), he plunged into the region of darkness. No necessity appears for his going to the extreme end of the passage and he was not bound for any destination which required his passage into or through the darkened area. Even though he thought himself on a public highway, he may not, ipso facto, neglect the precautionary progress that existing conditions naturally prompted in the exercise of reasonable care.
We are, therefore, of opinion that the motion for binding instructions should have been granted and that the failure to do so by the trial judge should be remedied by granting defendant's motion for judgment non obstante veredicto.
In view of this disposition of the case, there is no necessity at this time of passing upon the motion for a new trial.
And now, to wit, this 16th day of April, 1931, the motion ex parte defendant for judgment, notwithstanding the verdict, is granted, and judgment is now entered for the defendant upon payment of the verdict fee.
Plaintiff appealed. *Page 347 
 Error assigned was judgment for defendant n. o. v., quoting record.